UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SAMIA LEONARD,<br><br>    Plaintiff,<br><br>v.<br><br>KIPP DETROIT IMANI ACADEMY, et al.,<br><br>    Defendants. | Case No. 24-cv-11486<br><br>Honorable Robert J. White |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 17)**

Plaintiff Samia Leonard sued Defendants KIPP Whole Child Center d/b/a KIPP Michigan (KIPP Michigan), KIPP Detroit Imani Academy (KIPP Academy or the Academy), and Candance Rogers, in her official and individual capacity, for employment discrimination and a constitutional rights violation. (ECF No. 9, PageID.72, 78). In Count I of her amended complaint, Leonard claimed that Defendants wrongfully terminated her based on her marital status in violation of state law. (*Id.* at PageID.78–80). In Count II, Leonard brought a 42 U.S.C. § 1983 claim against Defendants for violation of her right to intimate association under the First Amendment. (*Id.* at PageID.80–83).

Before the Court is Defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17). The Court held a hearing on the motion on September 11, 2025. (ECF No. 26). At the hearing, Leonard's counsel indicated that Leonard planned to voluntarily dismiss Count I. Because the Court no longer needs to decide whether to dismiss Count I, it will address the parties' arguments as to Count II only.

In their motion, Defendants argued that Leonard failed to adequately allege (1) that Rogers and KIPP Michigan qualify as state actors for § 1983 purposes; and (2) that KIPP Academy was involved in Leonard's hiring and firing. (ECF No. 17, PageID.177–78). Leonard responded that Rogers and KIPP Michigan perform traditional state functions through their administration of a public school, KIPP Academy, such that they qualify as state actors. (ECF No. 18, PageID.229–32). What is more, KIPP Academy, KIPP Michigan, and Rogers are so intertwined that the actions of one are inherently that of the state. (*Id.* at PageID.232–33). So when Rogers terminated Leonard from her position at KIPP Michigan in support of KIPP Academy, that constituted state action for which the Court could hold all three Defendants liable. (*Id.*).

For the reasons explained below, the Court will grant in part and deny in part Defendants' motion to dismiss. Count II is sustained against Rogers and KIPP Michigan, but not against KIPP Academy.

I.    **Background**

Candace Rogers founded and incorporated KIPP Academy in January 2021 for the purpose of operating a public school academy (PSA) or charter school in the State of Michigan. (ECF No. 9, PageID.75; ECF No. 9-2, PageID.91). KIPP Academy provides tuition-free public education to children grades K-12 in Detroit. (ECF No. 9, PageID.75). The Academy's articles of incorporation define it as a "governmental entity." (ECF No. 9-2, PageID.89).

KIPP Michigan is a Michigan non-profit corporation formed for the purpose of providing "educational services and related school and student supports." (ECF No. 9-3, PageID.93). According to the complaint, KIPP Michigan's sole purpose is to provide educational management services to KIPP Academy. (ECF No. 9, PageID.75). Candace Rogers is both the Superintendent of KIPP Academy and KIPP Michigan's Chief Executive Officer. (*Id.*).

In April 2022, KIPP Michigan and KIPP Academy entered into an Educational Services Agreement (ESA) through which KIPP Michigan agreed to establish KIPP Academy's educational programs and operations. (ECF No. 9-4, PageID.97, 100). The Academy's Board of Directors (KDIA Board) signed the ESA on behalf of the Academy. (ECF No. 9-4, PageID.97, 114). The KDIA Board governs and oversees the Academy. (*Id.* at PageID.99).

3

Under the ESA, KIPP Michigan and KIPP Academy are separate entities and the parties' relationship is "based exclusively on the terms of [the ESA]." (*Id.* at PageID.97). Accordingly, KIPP Michigan is "solely responsible for its acts and the acts of its" agents and employees. (*Id.*). The ESA also states that "[t]he parties to [the ESA] intend that the relationship between them created by [the ESA] is that of an independent contractor." (*Id.* at PageID.97). By default, an employee of KIPP Michigan is not considered an employee of the Academy, unless subject to a listed exception. (*Id.* at PageID.98). And the ESA prohibits any director, officer, or employee of KIPP Michigan from serving on the KDIA Board. (*Id.* at PageID.98–99).

On February 26, 2024, Lenoard applied for the position of Managing Director of Finance and Human Resources at KIPP Michigan. (ECF No. 9, PageID.77). After a series of interviews, Rogers offered Leonard the position on April 11, 2024. (*Id.*). The formal offer letter set Leonard's start date as April 29, 2024 and confirmed that Leonard would "work at KIPP Michigan in support of KIPP Detroit Imani Academy." (ECF No. 9-5, PageID.120).

During the interviews, Rogers never inquired about Leonard's marital status, and Leonard did not mention anything herself. (ECF No. 9, PageID.77). On April 23, 2024, shortly before Leonard's start date, Rogers observed Leonard with her husband. (*Id.* at PageID.78). Rogers allegedly reacted with shock upon learning of

4

Leonard's husband; the following day, Rogers hosted Leonard for a remote Zoom call and terminated Leonard for failing to disclose her marital status or the identity of her spouse. (*Id.*).  Leonard's husband is Herve Leonard MPA, the Deputy Chief of Staff/Communications for the Detroit City Council. (*Id.*).

Following her termination, Leonard sued Rogers, KIPP Michigan, and KIPP Academy for employment discrimination and violation of her constitutional rights. (ECF No. 1; ECF No. 9).  Leonard alleged that Defendants terminated her based on her marital status in violation of Michigan's Elliot Larsen Civil Rights Act (ECLRA), Mich. Comp. Laws § 37.2201, et seq. (ECF No. 9, PageID.78–80).  She also claimed Defendants violated her right to intimate association under the First Amendment by terminating her following the reveal of her marriage. (*Id.* at PageID.80–83).  Leonard brought her First Amendment claim pursuant to § 1983. (*Id.* at PageID.80).

Defendants moved to dismiss the complaint. (ECF No. 17).  Defendants argued that Leonard failed to sufficiently establish her claims under state or federal law. (*Id.* at PageID.177).  Leonard agreed to dismiss Count I before the Court entered its Order.  Accordingly, the Court must now decide whether to dismiss Count II as well.

The Court will deny Defendants' motion to dismiss as to Rogers and KIPP Michigan.  Leonard has alleged enough facts to state a plausible claim for relief on

5

Count II against these Defendants. But because Leonard did not allege sufficient facts connecting KIPP Academy to the alleged offense, the Court will dismiss the claim against KIPP Academy.

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." To survive a motion to dismiss, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the alleged facts must establish a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570.

When reviewing a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). The court may also consider any exhibits attached to the complaint

so long as they are referred to in the complaint and are central to the claims contained therein.[1] *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).

## III. Analysis

Leonard brought Count II against all three Defendants under § 1983. She alleged that Defendants violated her right to intimate association under the First Amendment when Rogers terminated her because of her marital status and the identity of her spouse. (ECF No. 9, PageID.80–83). That is, because Rogers is the chief policymaker and final decisionmaker for KIPP Michigan and KIPP Academy, both entities are liable for her unlawful conduct. (*Id.* at PageID.81).

The Court finds that Leonard adequately alleged her § 1983 claim against Rogers and KIPP Michigan, but not KIPP Academy. Thus, the Court will dismiss Count II against KIPP Academy but sustain them as to the remaining Defendants.

### A. Leonard Plausibly Alleged that Rogers and KIPP Michigan are State Actors.

Defendants Rogers and KIPP Michigan asked the Court to dismiss Leonard's First Amendment claim as they are not state actors and cannot be held liable under § 1983. (ECF No. 17, PageID.194). Leonard responded that Rogers and KIPP

---

[1] The Court will consider the exhibits attached to Leonard's complaint as they are related to her employment offer with KIPP Michigan, the organization and purpose of KIPP Michigan and KIPP Academy, or demonstrative of the relationship between KIPP Michigan and KIPP Academy.

7

Michigan are state actors for purposes of § 1983 liability because they (1) assumed public functions traditionally held by the state and (2) are so intertwined with KIPP Academy that they functionally act as the state. (ECF No. 18, PageID.230–34).

To prove a § 1983 claim, a plaintiff must show "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) [that] the deprivation was caused by a person acting under color of state law." *Simescu v. Emmet Cnty. Dep't of Soc. Servs.*, 942 F.2d 372, 374 (6th Cir. 1991). Although a plaintiff generally cannot bring a § 1983 claim against a private party, "there are circumstances under which private persons may, by their actions, become 'state actors' for § 1983 purposes." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).

The Sixth Circuit provides that "a private party can fairly be said to be a state actor if (1) the deprivation complained of was caused by the exercise of some right or privilege created by the State and (2) the offending party acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Id.* at 590–91 (citation omitted). When distinguishing private action from state action, the key factor is whether the private actor is "'endowed with [state] powers beyond those enjoyed' by everyone else." *Nugent v. Spectrum Juv. Just. Servs.*, 72 F4th 135, 142 (6th Cir. 2023) (quoting *United States v. Miller*, 982 F.3d 412, 423 (6th Cir. 2020)). The Sixth Circuit considers a private person's or entity's conduct attributable to the state if it meets one of the following

8

three tests. *Tahfs*, 316 F.3d at 591. The tests are: (1) the public function test; (2) the state compulsion test; and (3) the nexus or symbiotic relationship test. *Id.* Leonard argued the public function test and nexus test are applicable here.[2] (ECF No. 18, PageID.229, 233–34). Because Defendants did not challenge KIPP Academy's status as a governmental entity, (ECF No. 17, PageID.188), the Court will focus its analysis on whether KIPP Michigan and Rogers are state actors.

After accepting all of the allegations as true and drawing all inferences in favor of Leonard, the Court finds Leonard plausibly alleged that KIPP Michigan and Rogers are state actors under the public function test. To satisfy the public function test, the private entity must "exercise powers which are traditionally exclusively reserved to the state." *Bell v. Mgmt. & Training Corp.*, 122 Fed. App'x 219, 222 (6th Cir. 2005). Private entities that hold elections, exercise eminent domain, or operate company-owned towns likely qualify as state actors under § 1983. *Nugent*, 72 F.4th at 140. As relevant here, courts have interpreted public education as a state function.[3] *Brown v. Bd. of Educ. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 493 (1954)

---

[2] Although Leonard stated initially that the public function test and state compulsion test applied to Defendants, (ECF No. 18, PageID.229), it is clear from the analysis in her brief that she relied on the public function and nexus tests. (*Id.* at PageID.233–34). Leonard's counsel confirmed the Court's reading at the hearing.

[3] The Sixth Circuit, however, has not endorsed education generally as a traditionally exclusive public function. *Nugent*, 72 F.4th at 142. For example, privately run schools funded and regulated by the state are not necessarily state actors. *Id.*; *see Rendell-Baker*, 457 U.S. at 842.

9

("education is perhaps the most important function of state and local governments"); *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (holding school served public function through provision of education to "maladjusted high school students"). Here, KIPP Michigan and Rogers work with a public school as defined by Michigan law. *See* Mich. Comp. Laws § 380.501(1). As a result, the Court accepts for the purpose of deciding the motion to dismiss that KIPP Academy is a state actor performing a traditional public function.

Whether KIPP Michigan and Rogers also serve traditional public functions is another question. According to Defendants, neither KIPP Michigan nor Rogers exercises powers traditionally exclusively reserved to the state. (ECF No. 19, PageID.244–45). Instead, KIPP Michigan is a private management company that operates as an independent contractor per the ESA. (ECF No. 17, PageID.188; ECF No. 9-4, PageID.97). And when Rogers offered Leonard the position as Managing Director of Finance and Human Resources, she did so on behalf of KIPP Michigan, not the Academy, to fill a role disconnected from any state function. (ECF No. 17, PageID.197–99).

Defendants cited *Bell v. Management & Training Corporation* in support of their position that KIPP Michigan, as a management company and independent contractor, does not satisfy the public function test. (ECF No. 17, PageID.194; ECF No. 19, PageID.245). In *Bell*, the defendant, a private company, entered a contract

10

with the Ohio Department of Rehabilitation and Corrections to operate a correctional facility in Ohio. 122 Fed. App'x at 221. The plaintiff, a former employee of defendant, sued defendant under § 1983 following her termination. *Id.* At the time of her termination, the plaintiff served as an executive secretary. *Id.* The plaintiff's supervisor cited plaintiff's job-related shortcomings and plaintiff's disciplinary record as the reason for her termination. *Id.*

The Sixth Circuit affirmed summary judgment in favor of defendants on the § 1983 claim. *Id.* at 224. Overall, the defendant's internal personnel decisions did not qualify as traditional exclusive state functions. *Id.* at 223. The State had no input or regulation applicable to how defendant, as a private company, ran its business. *Id.* Beyond the fact that the defendant provided services related to a traditional public function to the state, plaintiff offered no support for her claim that her termination implicated a public function. *Id.* As the Sixth Circuit explained, "mere employment with a government contractor does not render personnel decisions state action," and the "lack of state action is especially apparent in internal employment matters." *Id.*

Similarly, in *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992), personnel decisions made by a privately run facility did not qualify as state action even though the facility provided mental health, drug, and alcohol rehabilitative services to the local county, received extensive funding from the state, and was subject to state regulation and oversight. So even if KIPP Michigan worked hand-in-hand with

11

KIPP Academy, the decision to terminate Leonard does not necessarily qualify as state action, at least according to Defendants.

In response, Leonard cited *Riester v. Riverside Community School*, 257 F. Supp. 2d 968 (S.D. Ohio 2002) as persuasive authority to guide the Court's decision-making. (ECF No. 18, PageID.229–30). The facts of *Riester* are in many ways analogous to those here. Defendants in *Riester* consisted of a charter school, the school's principal, and two private management companies. 257 F. Supp. at 969. Like here, the school entered a contract with the management companies under which the companies would provide "educational services as well as operations." *Id.* But unlike the present case, the plaintiff was a teacher that worked at the school educating students, not managing finances or human resources. *Id.* And in deciding whether the defendants qualified as state actors, the court analyzed only the school under the § 1983 test. *Id.* at 972. It assumed that the management companies were state actors "by extension" without further analysis. *Id.*

Considering that the issue here revolves around whether a management company and its CEO are state actors, and not necessarily the school itself, the Court finds *Riester* less persuasive than Leonard likely hoped. That is, the Court will not presume that a charter school's independent contractors meet the public function test by extension, given the holdings in *Bell* and *Wolotsky*. But that does not mean the Court is ready to dismiss Count II. *Bell* and *Wolotsky* resolved appeals of summary

12

judgment orders. A court deciding summary judgment deals with the developed record and need not accept the plaintiff's allegations in the complaint as true. *See* Fed. R. Civ. Pro. 56(a).

In contrast, the Court here must accept the facts alleged as true. The Court finds the facts alleged sufficiently suggest that KIPP Michigan and Rogers served traditional exclusive public functions. According to the complaint, KIPP Michigan manages the day-to-day of KIPP Academy's operations, from student discipline to implementation of school policies and procedures. (ECF No. 9, PageID.76). The allegations are supported by the ESA. In fact, the ESA describes KIPP Michigan's role as providing "comprehensive educational, business administration, and management services for the operation of the Academy," including the "Educational Program." (ECF No. 9-4, PageID.97, 115). The ESA defines "Educational Program" ambiguously; it is the "educational programs and operations based on KIPP's school design, proven methodologies, and management principles." (*Id.* at PageID.97). Considering this ambiguity in the context of KIPP Michigan's role per the ESA, the Court may reasonably infer that KIPP Michigan is integral to the provision of education. As KIPP Michigan's CEO, and the apparent Superintendent of KIPP Academy, Rogers is potentially involved as well.

The Court will likely have sufficient information upon a summary judgment motion to clarify whether KIPP Michigan and Rogers operated as state actors for

13

§ 1983 purposes. But based on the complaint, the Court cannot discern the limits of the Rogers' and KIPP Michigan's roles in terms of educating the public. As a result, the Court will deny the motion to dismiss as to Count II as it pertains to Rogers and KIPP Michigan. The parties may renew the issue at summary judgment.

Finally, the Court will refrain from deciding whether KIPP Michigan and Rogers qualify as state actors under the nexus test. Count II of Leonard's complaint survives under the public function test, and therefore it is not necessary for the Court to analyze the nexus test in resolving Defendants' motion to dismiss.

> **B.** **Leonard Did Not Allege Sufficiently KIPP Academy's Involvement in Her Termination.**

Defendants asked the Court to dismiss Count II against KIPP Academy as the complaint failed to establish the Academy's role in the alleged offense. (ECF No. 17, PageID.199). Specifically, Leonard did not establish that KIPP Academy was directly responsible for her injuries, and therefore it cannot be held liable under a *respondeat superior* theory. (*Id.*). Leonard claimed, however, that Rogers' status as chief policy maker for KIPP Academy rendered the Academy liable for her actions under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). (ECF No. 18, PageID.234–35).

In presuming that KIPP Academy is a state actor, the Court finds that KIPP Academy did not deprive Leonard of any right sufficient to state a § 1983 claim. The Academy neither hired nor fired Leonard. Leonard's offer letter shows she was

14

hired to work at KIPP Michigan. (ECF No. 9-5, PageID.120). The ESA states that no employee of KIPP Michigan is an agent or employee of the Academy unless they fall within one of the exceptions outlined by the ESA. (ECF No. 9-4, PageID.97–98). The list of exceptions does not include Leonard's offered role of Managing Director of Finance and Human Resources. (*Id.* at PageID.98). And the ESA states that KIPP Academy is not responsible for decisions made by KIPP Michigan or its employees. (*Id.* at PageID.97).

In addition, the ESA undermines Leonard's argument that KIPP Michigan and KIPP Academy "are a single employer." (ECF No. 9, PageID.76). KIPP Michigan is an "independent contractor," and the Academy is governed by its own Board that, by design, includes no "director, officer, or employee" of KIPP Michigan. (ECF No. 9-4, PageID.98–99). Overall, Leonard presented little proof of the Academy's involvement in the decision to hire and fire Leonard, beyond conclusory statements that KIPP Michigan and the Academy are functionally the same entity. (ECF No. 9, PageID.75–76).

Similarly, the Court does not find the allegations sufficient to hold KIPP Academy liable for Rogers' decision to fire Leonard under *Monell*. *Monell* provides that local government units "cannot be held liable under § 1983 under a *respondeat superior* theory." 436 U.S. at 691. That is, a § 1983 claim against KIPP Academy, as a public school, cannot survive if the claim is "for an injury inflicted solely by its

15

employees or agents." *Id.* at 694. Instead, "it is when execution of a government's policy or custom . . . inflicts the injury" that § 1983 liability attaches. *Id.* An official governmental policy includes the acts of officials "with final decision-making authority." *Baynes v. Cleveland*, 799 F.3d 600, 621 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (noting official municipal policy includes the acts of policymaking officials).

Here, Leonard claimed that when Rogers fired her, she did so as the chief policy maker of KIPP Academy. (ECF No. 18, PageID.234). And because courts may interpret the acts of policymaking officials as the policy of the municipal entity, liability should attach to KIPP Academy for Leonard's § 1983 claim. (*Id.* at PageID.234–35). But, again, it is not evident from the pleadings that Rogers acted on behalf of KIPP Academy when she fired Leonard. Rather, the facts alleged in the complaint show that KIPP Michigan hired Leonard for an internal management role, and that Leonard would report to Rogers as the CEO of KIPP Michigan. (ECF No. 9-5, PageID.120). So even if Leonard serves as the chief policymaker for KIPP Academy, her decision, as the CEO of KIPP Michigan, to terminate Leonard from KIPP Michigan, did not effectuate any policy on behalf of the Academy. Based on the facts alleged in the complaint, only KIPP Michigan, and not KIPP Academy, could be held liable for Rogers' policymaking under *Monell*. Accordingly, the Court will dismiss the claim against KIPP Academy.

16

\* \* \*

For the reasons given, the Court **ORDERS** that the motion to dismiss (ECF No. 17) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the parties must submit a stipulated order of dismissal of Count I to the Court within seven days of this Order.

Dated: September 15, 2025            s/Robert J. White
                                     Robert J. White
                                     United States District Judge